ESTATE OF JOHN A. ALEXANDER, DARTMOUTH NATIONAL BANK OF HANOVER AND HERBERT CRAWFORD, COEXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3931–81.     Filed October 19, 1983.

*Daniel J. Connolly* and *Daniel F. Grossman,* for the petitioners.

*Barry J. Laterman,* for the respondent.

RAUM, *Judge*: The Commissioner determined a $164,974.70 Federal estate tax deficiency against the Estate of John A. Alexander (hereinafter petitioner or the estate). After concessions, the only issue remaining for decision is whether section 2036(a)(2), I.R.C. 1954, requires inclusion in the estate of that portion of an inter vivos trust which may be traced to transfers made by the decedent, John A. Alexander, to a trust in which the trustee could accumulate or distribute income. The answer depends in part upon whether the decedent, who was the original trustee and thereafter resigned as such, retained the right to redesignate himself as trustee.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by reference.

John A. Alexander died on May 16, 1977, survived by his wife, Elyza C. Alexander, and a daughter, Louise Alexander Sjobeck (Louise). The Federal estate tax return was filed with the Andover, Mass., Service Center on February 13, 1978. It is

stipulated that the coexecutors of the estate are Herbert Crawford, who resided in South Royalton, Vt., at the time the petition was filed, and the Dartmouth National Bank of Hanover, which had its principal place of business in Hanover, N.H., at the time the petition was filed.[1]

By a "Declaration of Trust" executed on December 21, 1943, the decedent established a trust for the benefit of Louise. A schedule attached as "Exhibit A" to the trust instrument shows that the decedent and his wife each contributed $3,000 to the trust on December 20, 1943. The trust instrument, in relevant part, provided as follows:

KNOW ALL MEN BY THESE PRESENTS that I, JOHN A. ALEXANDER of Royalton in the County of Windsor and the State of Vermont, do hereby state and declare that the personal property described in Exhibit A attached hereto and made a part hereof is held by me upon the terms and conditions and for the uses, trusts and benefits as follows:

(a) That the income thereof shall be devoted for the sole benefit of my daughter Louise Elyza Alexander, now nine months of age, in such manner and to such extent as I, or my successor, may desire to apply the same for such purpose and in the event that the same shall not be expended by me for such purpose during any calendar year the same shall accumulate and become part of the corpus of this trust.

(b) The principal of this trust and all accumulated income shall be paid over to my said daughter as follows: Five Thousand Dollars when she attains the age of twenty-one years and a like sum at the end of each five years thereafter until she attains the age of sixty-six years when the balance shall be paid over to her. Each payment, including the first payment, shall include all accumulations added to the principal since the last disbursement in the event that the entire income has not been expended for the benefit of my said daughter.

(c) In the event that my said daughter shall decease after becoming entitled to the principal of said trust, as above provided, but before the same has been fully disbursed, then and in such event the trust shall terminate and the property remaining on hand shall be paid over and transferred to her executor or administrator and the same shall be distributed as part of her estate.

(d) That in the event of the decease of my said daughter prior to the time when she shall be entitled to any part of the principal as hereinbefore provided, then and in such event this trust shall terminate and the property constituting this trust shall be and become part of her estate to be

---

[1]The Federal estate tax return shows one A. Pearley Feen as coexecutor with the Dartmouth National Bank of Hanover, but it appears that Mr. Feen died during the administration of the estate and Mr. Crawford was appointed to replace him. Mr. Crawford's name appears in the petition.

administered in accordance with her will or under the intestate laws of the State of Vermont.

I do further state and declare that I hold title to said personal property solely for the uses, purposes and trusts aforesaid and for the benefit of Louise Elyza Alexander and not for my own use or benefit.

I do further state and declare that it is my intention to make gifts to my said daughter, from time to time, of cash or securities and to accept property from others desiring to include the same under this trust and in such case any such property which I may give to my daughter or which may be transferred to me for her will be added to said Exhibit A and all property described and contained in said Exhibit A will be held by me solely for the uses, purposes and trusts aforesaid and for the benefit of Louise Elyza Alexander and not for my own use or benefit.

I do hereby reserve the right from time to time and at any time to designate a successor trustee by a writing endorsed hereon, or a counterpart hereof. Any succeeding trustee shall have all the powers conferred upon me by and under this instrument. In the event of my decease without such appointment I do hereby appoint the administrator or executor of my estate as such successor trustee.

I reserve the right, as trustee, and such right is reserved to any successor trustee, in addition to and not in limitation of all common law and statutory authority, with regard to both real and personal property in this trust fund and any part thereof * * * to determine what shall be charged or credited to income and what to principal notwithstanding any determination by the courts and specifically but without limitation, to make such determination in regard to stock and cash dividends, rights and all other receipts in respect to the ownership of stock and to purchase or retain stocks which paid dividends in whole or in part otherwise than in cash and in my discretion to treat such dividends in whole or in part as income; to make payments of principal or income to the beneficiary of this trust even though a minor as though she were of full age; to make distributions or divisions of principal hereunder in property in kind at values determined by me or my successor; to decide whether or not to make deductions from income for depreciation, obsolescence, amortization or waste, and if so, in what amount; to pay, compromise or contest any claim or other matter directly or indirectly affecting this fund; and generally to do all things in relation to the trust fund which I or my successor could do if this fund was my property. All such divisions and decisions made by the trustee hereunder in good faith shall be conclusive on all parties at interest.

Notwithstanding anything hereinbefore to the contrary contained, the trustee hereunder is and shall be authorized, if in his judgment it would be for the best interests of the beneficiary of this trust to make loans or advances to the original trustee hereunder or his executor or administrator on such terms as the trustee shall deem advisable, but not to any successor trustee, and to purchase and hold any mortgage upon real estate belonging to the original trustee hereunder or the wife of said original trustee or both of them.

As stated in the trust instrument, the decedent was the original trustee of the trust. The parties have stipulated that from 1944 through 1947, the decedent made the following taxable gifts to the trust:

| | |
|---|---:|
| 1944 | $29,636.90 |
| 1945 | 3,000.00 |
| 1946 | 13,764.29 |
| 1947 | 23,369.69 |

Gifts to the trust by decedent's wife appear to have been made generally in smaller amounts. A statement attached to the Federal estate tax return reported that "The fair market value of trust assets at 5/16/77 was $715,359." The decedent had been engaged in the used car business for many years, either as a sole proprietor, or as a member of a partnership, or through one or more corporations, or in several such capacities at the same time. Funds of the trust were employed at least in part in connection with financing sales made by those enterprises, and the record suggests that enhancement of the trust's assets may have been attributable at least in part to such use of its funds.

By a document executed on July 27, 1950, the decedent designated A. Pearley Feen as successor trustee effective that day, "with all the rights, privileges and obligations arising out of such designation. I surrender to the said A. Pearley Feen all power and authority granted to the Trustee under said Declaration of Trust." On four additional occasions—November 19, 1968; October 22, 1973; August 26, 1975; and September 10, 1975—the decedent designated other successor trustees or cotrustees, but at no time after July 27, 1950, was the decedent a trustee. None of the documents by which the decedent designated successor trustees or cotrustees contains any statement in respect of whether the decedent retained or released the power to name himself again as trustee or cotrustee.

In the statutory notice of deficiency, the Commissioner determined that the "December 21, 1942 irrevocable trust created by the decedent for the benefit of decedent's daughter * * * is includible in the decedent's gross estate as he retained the right do [sic] designate who shall possess or enjoy the property," and increased the amount of the gross estate by $437,514.14. This latter amount would seem to be approxi-

mately equal to that portion of the reported value of the trust at the time of death ($715,359) attributable to transfers made by the decedent. In any event, no issue is presented as to the correctness of the amount added by the Commissioner to the gross estate, provided only that it is properly includable in the gross estate.

## OPINION

Petitioner contests the Commissioner's determination on two separate grounds. First, it is contended that the powers retained by the decedent as trustee in 1943 do not constitute "the right * * * to designate the persons who shall possess or enjoy the property or the income therefrom." Sec. 2036(a)(2), I.R.C. 1954.[2] Second, it is petitioner's position that, even if the decedent retained such a right in his role as trustee, he effectively released the right when he named a successor trustee in 1950 or thereafter, with the result that the trust would not be included in the gross estate.

(1) *Section 2036(a)(2).*—While the portion of the trust instrument set out in the findings of fact discloses a number of powers granted to the trustee, the issue presented by the parties focuses solely on the trustee's power to accumulate income and add it to corpus. Under paragraph (a), the decedent provided that trust income would be "devoted for the sole benefit" of Louise, who was then 9 months of age, "in such manner and to such extent as I, or my successor, may desire." If any income were not distributed during a calendar year, then such income would become part of the corpus of the trust. Upon reaching the age of 21, Louise was to receive distributions from the trust in $5,000 installments every 5 years, "Each payment, including the first payment, * * * [to] include

---

[2]Sec. 2036(a), I.R.C. 1954, as in effect for transfers made prior to June 23, 1976, provides:

SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

all accumulations added to the principal since the last disbursement in the event that the entire income has not been expended for the benefit of my said daughter." When Louise reached the age of 66, the trust was to terminate with the balance of the assets to be paid over to her.

While the decedent's right to accumulate income at his discretion allowed him to restrict Louise's current enjoyment of trust income, it could not be used to deny her eventual dominion over the trust assets, whether income or corpus. Paragraphs (c) and (d) make clear that any assets of the trust which fail to pass to Louise during her lifetime must pass to her estate. Thus, Louise was both income beneficiary and remainderman of the trust, and, for this reason, petitioner contends, the power to accumulate income in the trust could not constitute the right to "designate the persons who shall possess or enjoy the property or the income therefrom." While this position is not without a certain superficial appeal, as well as some support from commentators,[3] we conclude that the weight of logic and judicial precedent is to the contrary.

To be sure, the decedent did not retain the right to designate the recipient or recipients of trust assets in the event that Louise died prior to termination of the trust. In this sense, it might be said that Louise, rather than the decedent, had the right to designate the persons, other than herself, who would possess or enjoy the property and any accumulated income. But, as is borne out by the case law, the boundaries of section 2036 are not to be drawn so narrowly, because the statute is concerned with *present* enjoyment of property through the income therefrom, and not simply with control over the vesting of future interests in the property. Thus, in *Struthers v. Kelm*, 218 F.2d 810 (8th Cir. 1955), a decedent retained the right, with two others, to accumulate or distribute the income of three trusts, and though the trusts were silent on the subject, it was considered to be determined as a matter of applicable State law that the decedent could not deprive the income beneficiaries of control over the remainder interests. Still, the court held that the predecessor of section 2036(a)(2)

---

[3]See R. Stephens, G. Maxfield & S. Lind, Federal Estate and Gift Taxation, par. 4.08[5][c] (5th ed. 1983); C. Lowndes, R. Kramer & J. McCord, Federal Estate and Gift Taxes, sec. 9.20 (3d ed. 1974).

required inclusion of the trusts in the decedent's gross estate, and in reaching this conclusion it applied the reasoning of the Supreme Court's interpretation of the predecessor of the analogous section 2038, I.R.C. 1954, in *Lober v. United States*, 346 U.S. 335 (1953), and *Commissioner v. Estate of Holmes*, 326 U.S. 480 (1946). After explaining that the "gravemen" of the two statutes (the predecessors of sections 2036 and 2038) was the same, the court stated (218 F.2d at 814):

In the Lober case the fact relied on as distinguishing this case from the Lober case was assumed, i.e., that the trust instrument gave Lober's children a vested interest under state law so that if they had died after creation of the trusts their interests would have passed to their estates. But that fact was held undeterminative and Lober's estate was charged with the estate tax because Lober's children, as beneficiaries of the trust, were granted no "present right to immediate enjoyment of either income or principal" without Lober's consent. In this case the beneficiary under Mrs. Barney's trust instrument was not granted the present right to immediate enjoyment of the income or principal without Mrs. Barney's permission, acting "in conjunction with" the other trustees. Since the Holmes' Estate case and the Lober case give controlling emphasis and effect to the present right of enjoyment of the trust by the beneficiary, rather that [sic] when the title to the trust property technically vested under state law, or the absence of power on the part of the donor to alter or amend that title, this case may not be distinguished from Lober v. United States and Commissioner of Internal Revenue v. Holmes' Estate, supra.

In analyzing and applying section 2036(a)(2), we have likewise emphasized present enjoyment of property rather than the right or power to designate the remaindermen if an income beneficiary should die prior to termination of the trust. In *Estate of O'Connor v. Commissioner*, 54 T.C. 969 (1970), the decedent retained the power to accumulate or distribute the income from property held in four trusts for his four children, with each child's trust to terminate when the child reached the age of 21. If a child predeceased the termination of his trust, any principal or income (including accumulated income) was to be distributed to the child's estate. After noting that the parties there agreed that were it not for a separate provision in the trust indenture which might be said to limit the trustee's powers, the principal of each trust would be includable in the decedent's gross estate, we said (54 T.C. at 973):

the case law makes this abundantly clear. It is well settled that section 2036(a)(2) requires inclusion of both the original principal and the accumulated income of an irrevocable trust in the settlor's gross estate where at the

time of his death the settlor retains the discretionary power either to distribute trust income to income beneficiaries or to accumulate such income and add it to principal; *the power to deny to the trust beneficiaries the privilege of immediate enjoyment* and to condition their enjoyment upon their surviving the termination of the trust has been considered to be of sufficient substance to qualify as a power to "designate" within the meaning of section 2036(a)(2). *United States v. O'Malley*, 383 U.S. 627; *Industrial Trust Co. v. Commissioner*, 165 F.2d 142 (C.A. 1), affirming in this respect *Estate of Milton J. Budlong*, 7 T.C. 756. See also sec. 20.2036–1(b)(3), Estate Tax Regs. [Emphasis supplied.]

Thus, to avoid section 2036(a)(2), it is not enough that the settlor-trustee does not retain the right to determine to whom trust income or corpus will go in the event that the named beneficiary dies prematurely. The right of the settlor-trustee to deny to the named beneficiary the present enjoyment of the trust income is a right of designation within the scope of the statute. See *Estate of Rott v. United States*, 321 F. Supp. 654, 655 (E.D. Mo. 1971) ("By accumulating income, the decedent could determine whether the beneficiaries, their estates, or such persons as the beneficiaries had appointed by will would possess or enjoy the property or the income from the property transferred to the trusts"); *Estate of Ritter v. United States*, 297 F. Supp. 1259, 1262–1263 (S.D. W. Va. 1968). See also *Estate of Carpenter v. United States*, an unreported case (W.D. Wis. 1980, 45 AFTR 2d 80–1784, 80–1785, 80–1 USTC par. 13,339).

For these same reasons, the applicability of section 2036(a)(2) is unaffected by the requirement that accumulated income be distributed at 5-year intervals after Louise reached the age of 21. Regardless of the length of deferral, the effect is the same: Louise could enjoy accumulated income only if she survived to the mandated time of distribution. Prior to the required distributions, her enjoyment was at the whim of her father so long as he remained trustee or had the right to redesignate himself trustee, and in such circumstances, section 2036(a)(2) causes inclusion of the principal and accumulated income in his gross estate.

(2) *Release of the power.*—Petitioner contends that even if the decedent retained a section 2036(a)(2) "right" upon creation of the trust in 1943, he no longer held such "right" after he named a successor trustee in 1950. Despite the fact that the language of section 2036 is focused upon the retention of a

right at the time of transfer, and that the statute makes no mention of the effect of a later release of such a right, it appears that section 2036 will not in fact be applied where such a right is effectively released more than 3 years prior to the decedent's death. See *Estate of Ware v. Commissioner*, 480 F.2d 444, 448 (7th Cir. 1973), revg. on another ground 55 T.C. 69 (1970); *Estate of Cuddihy v. Commissioner*, 32 T.C. 1171, 1177 (1959); compare *United States v. Allen*, 293 F.2d 916, 918 (10th Cir. 1961) (Breitenstein, J., concurring). The issue raised by petitioner's contention, then, is whether the mere naming of a successor trustee by the decedent in 1950 or at any later time effected a release of the decedent's rights in respect of the trust. The parties seem to agree that this would be the case only if the decedent could not thereafter appoint himself a successor trustee or co-trustee. Accordingly, assuming that section 2036(a)(2) is otherwise applicable, as already held above, petitioner does not contest its applicability here if the decedent was empowered to redesignate himself trustee after he had resigned and named a successor trustee. See *Estate of Farrel v. United States*, 213 Ct. Cl. 622, 553 F.2d 637, 642 (1977).[4]

We find no convincing indication in either the "Declaration of Trust" or any of the documents by which the decedent appointed successor trustees or cotrustees that the decedent was at any time precluded from once again serving as a trustee. All of these documents are silent in this respect, and we find no basis upon which we can infer such a restriction. Indeed, all reasonable indications point in the opposite direction. To be sure, under the 1950 "Designation of Substitute Trustee" the decedent surrendered "all power and authority granted to the Trustee under said Declaration of Trust." Nevertheless, the fact that the decedent appointed successor trustees on four subsequent occasions makes clear that this surrender of powers stopped short of the retained right to appoint successor trustees, and we therefore cannot see how it might be said to restrict that right in any manner. If

---

[4]See also sec. 20.2036–1(b)(3), Estate Tax Regs:

"if the decedent reserved the unrestricted power to remove or discharge a trustee at any time and appoint himself as trustee, the decedent is considered as having the powers of the trustee."

petitioner's view were adopted, the decedent would have had the right to designate anyone in the world except himself as a successor trustee. We do not accept any such bizarre construction of the documents before us. Furthermore, evidence introduced by petitioner as to the decedent's intent in this respect[5] was vague and unpersuasive. We are convinced of nothing more than that the decedent did not want the trust assets included in his estate, but this is insufficient to alter the legal ramifications of the actions taken by the decedent. The right of designation was retained by the decedent when the transfers were made and was not thereafter released by him, and the trust assets must therefore be included in his gross estate under section 2036(a)(2). The Commissioner's determination is sustained.

*Decision will be entered for the respondent.*

---

[5]There was considerable doubt as to the admissibility of this evidence, which we received provisionally. However, even after taking it into account, it falls far short of establishing petitioner's position, and we therefore need not rule upon its admissibility at this time.