**Julia W. BARBER, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 16710.

United States Court of Appeals
Fifth Circuit.

Jan. 14, 1958.

Rehearing Denied Feb. 20, 1958.

Lee C. Bradley, Jr. Birmingham, Ala., for appellant.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, James P. Turner, Ellis N. Slack, Dept. of Justice, Washington, D. C., W. L. Longshore, U. S. Atty., Birmingham, Ala., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

This action is for the recovery of income taxes for the year 1949. The district court concluded that Sections 22(a) and 166 of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 22(a), 166, and Regulation 111, Sections 29.22(a)–21(c), (d) and (e), required it to dismiss the action. The deficiency had been determined by the Commissioner by attributing to the taxpayer a part of the income of a trust settled by the taxpayer and her husband upon themselves as trustees for the benefit of their eight year old son.

The district court went so far as to hold that the execution of the trust deed and declaration "did not constitute a bona fide arms' length transaction for federal

income tax purposes." The Commissioner had, however, conceded, and the Government still concedes, that to the extent of a $30,000.00 gift to the son, the trust is valid and irrevocable.

The trust instrument stated that,

" \* \* \* I desire to give unto my son, George W. Barber, Jr., an equitable estate in an interest in the subject property of the present value of, to-wit, $30,000, by conveying in trust the entire one-half interest in the subject property which I own, to be held subject to the charge and lien reserved unto me by this indenture \* \* \*."

It is not necessary to set out the detailed terms of the trust since no question is raised as to its validity insofar as the $30,000.00 gift is concerned. The portion of it held invalid for tax purposes relates to the charge and lien reserved by the taxpayer.

That charge was stated to be, "in the sum of, to-wit, $151,251.06, which, with the interest thereon, is to be secured by lien reserved thereon as hereinafter provided, and is hereinafter called the charge in favor of the grantor." At another place the trust instrument declared:

"The conveyance hereby made is made subject to a charge in favor of the grantor in the original principal sum of $151,251.06. I, Julia W. Barber, do hereby reserve a lien to secure said charge in favor of the grantor and said charge is secured by a lien upon the trust premises in the general nature of a vendor's lien."

It was stipulated in substance that at the time of the indenture the fair market value of the trust property was $30,000.-00 more than the amount of the reserved charge.

The charge was to bear interest at the rate of one per cent per annum, payable as and when rents are received from the trust premises. The principal was stated to be payable ten years from the date of the indenture, but there were powers in the trustees to make payment of any part of the principal at any time, and from time to time, and to extend, without the consent of the grantor, the time of maturity of the charge remaining unpaid for five year periods at interest acceptable to the grantor but no more onerous than the trustees might be able to obtain from others. The trust instrument provided:

"While the charge in favor of the grantor is secured by lien upon the property held in the trust estate, this lien may not be foreclosed or any recourse had to the trust premises or other property held in the trust estate for the payment of the charge by any proceedings of any character at law or in equity by way of execution or otherwise (except as above and hereinafter specifically provided), during the lifetime of the son of the grantor, George W. Barber, Jr., unless he shall then have arrived at the age of thirty-five (35) years."

The powers vested in the trustees were extremely detailed without limiting their general powers to manage and control the trust estate "as if the trustees were entitled to said property beneficially." In their discretion the trustees might make payments from time to time upon the principal of the charge out of the income of the trust. Upon sale of any of the trust premises, the cash proceeds of sale not required for the discharge of obligations secured by prior lien were to "be forthwith applied by the trustees towards the payment of the principal of the charge in favor of the grantor."

At the time of maturity, or at any prior time, the grantor was given the right to demand payment

"in an amount which may be borrowed by the trustees upon the security of the trust premises (jointly with the trustees under the indenture executed concurrently by the grantor's husband, or independently thereof) upon first mortgage, in an amount approximating fifty per cent (50%) of the market value of the trust premises at the time (as esti-

mated conclusively by the trustees) or, if no more burdensome terms appear to the trustees to be imposed with respect to a mortgage loan which does not exceed sixty per cent (60%) of the value of the trust premises at the time, as determined conclusively by the trustees, then up to such amount."

The indenture emphasized that the powers of the trustees "are fiduciary and not beneficial powers," "to be exercised as a fiduciary and not a beneficial power," "in the interest of the trust estate and its beneficiaries and not for the personal advantage of the trustees." The taxpayer and her husband were to serve as trustees without compensation for their services.

Fiduciary duties were owed to the grantor herself. The trust instrument provided: "The within trusts are also set up and declared for the security of the grantor in respect of the charge in favor of the grantor, hereinafter more specifically dealt with." Again, the indenture provided: "Notwithstanding anything herein contained which might otherwise imply the contrary, the trustees shall owe fiduciary duties with respect to the charge in favor of the grantor."

The trust deed recited that the grantor's husband,

"George W. Barber, also desires to give unto our said son George a corresponding estate in the subject property equal in value to that which I intend to give our son hereby, and, to accomplish said purposes, my said husband has executed and delivered to himself and to me, as trustees, an indenture bearing even date herewith, executed and delivered concurrently herewith, which undertakes to convey to us, as trustees, the one-half undivided interest in the subject property owned by him, which corresponds with this indenture in the disposition of said property * *."

The district court found that "George W. Barber, husband of plaintiff, held no substantial interest in the property described in the instrument executed by plaintiff which was adverse to plaintiff."

As we understand the taxpayer's basic contention, it is that the trustees accepted the trust subject to the charge or lien, the payment of which would inure to the benefit of the minor son beneficiary, and that, under the principles announced by this Court in the estate tax case of Hay's Estate v. Commissioner, 1950, 181 F.2d 169, 39 A.L.R.2d 453, and later applied in the income tax case of Edwards v. Greenwald, 5 Cir., 1954, 217 F.2d 632, the entire rental income of the trust for the year 1949 was taxable to the trustees, and the taxpayer, if taxable at all,[1] was taxable only with the one per cent interest on the charge in her favor. In relying upon the Hay's Estate decision, the taxpayer recognizes that the Court of Claims refused to follow that case in Lober v. United States, 1952, 108 F.Supp. 731, 124 Ct.Cl. 44, and that its decision was affirmed in Lober v. United States, 346 U.S. 335, 74 S.Ct. 98, 98 L.Ed. 15, but insists that such disapproval does not concern the parts of the decision upon which she relies.

Irrespective of the soundness of our decisions in either of these two cases as applied to the facts there presented, we are of the clear opinion that they do not control the decision of this case on its peculiar facts. Here, the taxpayer expressed her intention to make a gift of the value of $30,000.00 and she actually did just that. She bases her argument largely on the form of the gift of an equitable estate in her entire interest in the property, and upon the form of her reserved charge or lien in the nature of a vendor's lien to secure a certain indebtedness at a low rate of interest. That form, however, was subject to change at the will of the taxpayer and of her husband, not through any formal foreclosure, but by the exercise of their

---

1. Because the interest due was not actually received by her in that year, she insists that for 1949 she was not, upon the basis of constructive receipt of the interest or otherwise, taxable in any amount.

powers of sale, of prepayment of the charge or lien, and their other extremely broad powers under the trust, exercised in the interest of the trust estate but keeping in mind their fiduciary duties to the grantor herself.

To the extent of the charge or lien in favor of the grantor the conveyance into trust was illusory. The grantor and her husband retained such complete power over the trust to that extent, that she remained in substance the owner of the proportion of the trust premises represented by her reserved charge or lien. To that extent the income was taxable to her under Section 22(a) of the Internal Revenue Code of 1939 and under Treasury Regulations 111, Sections 29.22(a)–21(c), (d) and (e), which implemented the doctrine of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. To that extent there was lacking the crucial intent of the taxpayer to divest herself of ownership and control necessary for the validity of a sale or gift. Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L. Ed. 406; Sewell's Estate v. Commissioner, 5 Cir., 1945, 151 F.2d 806; Blalock v. Allen, 5 Cir., 1945, 151 F.2d 927; Jacobs v. Commissioner, 5 Cir., 1942, 129 F.2d 99.

The income with respect to the amount of the charge in favor of the grantor was also taxable to taxpayer under Section 166 of the 1939 Internal Revenue Code. While the trustees did not have the power to revest in the grantor the technical title to the trust real properties, they could, through their many reserved powers, restore the grantor to full ownership of the value of that part of the corpus of the trust represented by her reserved charge or lien. In the language of Mr. Justice Holmes, "Taxation is not so much concerned with refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916; Griffiths v. Helvering, Commissioner, 308 U.S. 355, 357, 60 S.Ct. 277, 84 L.Ed. 319.

The judgment of the district court is Affirmed.